# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

FIGURE TECHNOLOGIES, INC.,

       *Plaintiff*,

    v.

HARRISON SCOTT
PUBLICATIONS, INC. d/b/a *Asset-Backed Alert* and MATTHEW
BIRKBECK,

       *Defendants*.

Civ. Action No. 2:20-cv-01380-WJM-MF

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION UNDER CAL. CIV. PROC. CODE § 425.16

BALLARD SPAHR LLP

Michael Berry
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Tel: (215) 665-8500
Fax: (215) 864-8999
berrym@ballardspahr.com

Thomas B. Sullivan
1675 Broadway, 19th Floor
New York, NY 10019-5820
Tel: (212) 850-6139
Fax: (212) 223-1942
sullivant@ballardspahr.com

*Counsel for Defendants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ......................................................................................3

ARGUMENT ..........................................................................................6

I.     THE PROTECTIONS OF CALIFORNIA'S ANTI-SLAPP LAW
       APPLY IN THIS CASE .....................................................................6

       A.    California's Anti-SLAPP Law .............................................. 6

       B.    New Jersey's Choice-of-Law Rules ......................................8

II.    DEFENDANTS ARE ENTITLED TO RELIEF UNDER
       CALIFORNIA'S ANTI-SLAPP LAW ................................................17

       A.    Figure's Claim Arises From Speech On A Matter Of Public
             Interest ............................................................................17

       B.    Figure Cannot Meet Its Burden Of Showing A Probability
             Of Prevailing On Its Claims ...............................................19

CONCLUSION ......................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*Adelson v. Harris*,
    973 F. Supp. 2d 467 (S.D.N.Y. 2013) ...............................................16

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) .......................................................2, 7

*Britts v. Superior Court*,
    52 Cal. Rptr. 3d 185 (Ct. App. 2006) ...............................................12

*Chau v. Lewis*,
    935 F. Supp. 2d 644 (S.D.N.Y. 2013) ...............................................18

*Clark v. Prudential Ins. Co. of Am.*,
    2009 U.S. Dist. LEXIS 84093 (D.N.J. Sept. 15, 2009).....................15

*Clifford v. Trump*,
    339 F. Supp. 3d 915 (C.D. Cal. 2018) ...............................................16

*DC Comics v. Pac. Pictures Corp.*,
    706 F.3d 1009 (9th Cir. 2013) .........................................................7

*Diamond Ranch Academy, Inc. v. Filer*,
    117 F. Supp. 3d 1313 (D. Utah 2015)...............................................16

*Equilon Enters., LLC v. Consumer Cause, Inc.*,
    52 P.3d 685 (Cal. 2002) ...........................................................8, 12

*Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., L.L.C.*,
    450 N.J. Super. 1 (Super. Ct. App. Div. 2017)..............................9, 10

*Fu v. Fu*,
    160 N.J. 108 (1999) .....................................................................14

*GetFugu, Inc. v. Patton Boggs LLP*,
    162 Cal. Rptr. 3d 831 (Ct. App. 2013) ...............................................18

*Gilead Scis., Inc. v. Abbott Labs., Inc.*,
    2015 U.S. Dist. LEXIS 31006 (D. Del. Mar. 13, 2015)....................17

*Greenfeder v. Jarvis*,
    302 N.J. Super. 153 (Super. Ct. App. Div. 1997)................................................13

*Haggerty v. Cedeno*,
    279 N.J. Super. 607 (Super. Ct. App. Div. 1995)................................................13

*James v. Glob. Tel\*Link Corp.*,
    No. 13-4989 (WJM), 2018 U.S. Dist. LEXIS 131892
    (D.N.J. Aug. 6, 2018)..........................................................................................8

*Kaplan v. GreenPoint Glob.*,
    No. 2:11-cv-04854 (WJM), 2012 U.S. Dist. LEXIS 100911
    (D.N.J. July 20, 2012)..........................................................................................8

*Kearney v. Foley & Lardner*,
    553 F. Supp. 2d 1178 (S.D. Cal. 2008)............................................................12

*LoBiondo v. Schwartz*,
    199 N.J. 62 (2009) ............................................................................................11

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) ............................................................................16

*Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001) ..............................................................................7

*Mindys Cosmetics, Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010) ............................................................................17

*Nikolin v. Samsung Elecs. Am., Inc.*,
    2010 U.S. Dist. LEXIS 110942 (D.N.J. Oct. 18, 2010) ......................................9

*Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ............................................................................19

*Price v. Stossel*,
    620 F.3d 992 (9th Cir. 2010) ............................................................................16

*Pub. Emps.' Ret. Sys. v. Moody's Inv'rs Serv., Inc.*,
    172 Cal. Rptr. 3d 238 (Ct. App. 2014) ............................................................18

*Rogers v. Home Shopping Network, Inc.*,
    57 F. Supp. 2d 973 (C.D. Cal. 1999)................................................................19

*Sarver v. Chartier*,
  813 F.3d 891 (9th Cir. 2016) ......................................................................10, 11

*Schering Corp. v. First DataBank, Inc.*,
  2007 U.S. Dist. LEXIS 50164 (N.D. Cal. Apr. 20, 2007)...........................14, 15

*Sys. Operations, Inc. v. Sci. Games Dev. Corp.*,
  555 F.2d 1131 (3d Cir. 1977) ...............................................................................10

*P.V. ex rel. T.V. v. Camp Jaycee*,
  197 N.J. 132 (2008) ..........................................................................................8, 10

*Thomas v. Fry's Elecs., Inc.*,
  400 F.3d 1206 (9th Cir. 2005) ..............................................................................16

*Tobinick v. Novella*,
  108 F. Supp. 3d 1299 (S.D. Fla. 2015) ................................................................15

*Varian Med. Sys., Inc. v. Delfino*,
  35 Cal. 4th 180 (2005) ...........................................................................................7

*Veazey v. Doremus*,
  103 N.J. 244 (1986) ..............................................................................................14

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ........................................................................16, 17

*Warriner v. Stanton*,
  475 F.3d 497 (3d Cir. 2007) ...................................................................................8

*Weske v. Samsung Elecs. Am., Inc.*,
  No. 2:10-cv-4811 (WJM), 2012 U.S. Dist. LEXIS 32289
  (D.N.J. Mar. 12, 2012)............................................................................................9

*Wilbanks v. Wolk*,
  17 Cal. Rptr. 3d 497 (Ct. App. 2004) ...................................................................18

*Yocham v. Novartis Pharms. Corp.*,
  736 F. Supp. 2d 875 (D.N.J. 2010)........................................................................14

## Statutes & Other Authorities

Cal. Civ. Proc. Code § 425.16 ......................................................................*passim*

Restatement (Second) of Conflict of Laws § 150................................................9, 10

## PRELIMINARY STATEMENT

In this case, a California-based financial services company has sued a New Jersey publisher and its reporter solely for their speech on a matter of public interest.  Specifically, Figure Technologies, Inc., one of the country's largest originators of home equity lines of credit, has long touted that it would be the first company to launch a securitization deal using blockchain technology.  *Asset-Backed Alert* (*ABA*), a specialty publication covering the asset-backed securities market, reported that this effort was delayed last summer when a ratings agency raised concerns about the riskiness of the collateral in Figure's asset pool and that "conflicting accounts arose about whether Figure was being up-front about the nature of its receivables."

Figure quickly filed this suit claiming that report was false and defamatory.  Yet, through careful pleading, Figure has attempted to obscure the fact that it does not actually dispute the truth of any of *ABA*'s reporting.  In addition, Figure does not – and cannot – allege facts showing that the report was published with actual malice.  The publisher and reporter nonetheless find themselves subject to the significant burden and expense of defending against this facially meritless lawsuit.

Figure appears to have filed this suit in New Jersey, rather than its home of California, in an attempt to avoid the reach of California's anti-SLAPP law.  *See*

Cal. Civ. Proc. Code § 425.16.[1]  That law provides immunity from meritless

lawsuits directed toward speech on matters of public interest.  The anti-SLAPP law

does so by making such suits subject to "a special motion to strike" that requires a

plaintiff to demonstrate, at the outset of a case, "that there is a probability that [it]

will prevail on the claim."  *Id.* § 425.16(b).  If the plaintiff cannot meet that

burden, then the defendants are immune from suit and awarded their "attorney's

fees and costs."  *Id.* § 425.16(c).

As the text of the statute explains, the law reflects California's concern "that

there has been a disturbing increase in lawsuits brought primarily to chill the valid

exercise of the constitutional rights of freedom of speech," and its related

conviction that "it is in the public interest to encourage continued participation in

matters of public significance, and that this participation should not be chilled

through abuse of the judicial process."  *Id.* § 425.16(a).  That concern is squarely

implicated here.  Indeed, Figure has brought a baseless lawsuit seeking to deter the

financial press from reporting on an issue that impacts both the market for home

equity loans and the market for asset-backed securities, and it has done so as the

country faces a significant financial crisis affecting both markets.

Under New Jersey's choice-of-law rules, this Court should apply

California's anti-SLAPP law because that state has the most significant

---

[1] SLAPP stands for "Strategic Lawsuits against Public Participation."  *Batzel v. Smith*, 333 F.3d 1018, 1023-24 (9th Cir. 2003).

relationship to this case.  California is where Figure is headquartered and where it was purportedly injured by Defendants' reporting.  That state has expressed a strong interest in deterring its residents from bringing groundless lawsuits targeting news reports on matters of public interest and in providing a remedy to publishers forced to defend themselves against those kinds of claims.  Figure's cross-country effort to squelch the speech of a New Jersey publisher and escape its home-state remedy should not be countenanced.  Because Figure cannot demonstrate a probability of success on the merits, the anti-SLAPP law provides that Defendants are immune from suit and should be awarded their costs and attorney's fees.

## BACKGROUND[2]

Figure is a financial services company headquartered in San Francisco, California.  Compl. ¶¶ 1, 5.  The company offers a variety of financial products to consumers and, since its launch in 2018, has quickly grown to become one of the United States' "largest originators of home equity lines of credit (HELOCs)."  *Id.* ¶ 1.  For over a year, Figure has worked to securitize its HELOCs and to become the first company to complete a securitization using blockchain technology.  *Id.*; Memorandum of Law in Support of Motion to Dismiss at 4-8 ("MTD Br.").

---

[2] The memorandum of law in support of Defendants' motion to dismiss, filed at the same time as this motion, contains a full recitation of the background of this matter.  To avoid needless repetition, Defendants hereby incorporate by reference the background section of that memorandum in this brief.

Defendant Harrison Scott Publications, Inc., based in Hoboken, New Jersey, is the former publisher of *ABA*, a specialty publication that covers the market for securitizing "consumer loans, home mortgages, and corporate receivables." Compl. ¶ 6; Decl. of Michael Berry, Esq. ("Berry Decl."), Ex. 12. *ABA* is now owned by Green Street Advisors, LLC, headquartered in Newport Beach, California. *ABA* has covered Figure and its oft-delayed effort to securitize its HELOCs since the company's founding. *See* MTD Br. at 5-7.

On February 7, 2020, *ABA* published the story at issue in this litigation (the "Story"), written by defendant Matthew Birkbeck. Compl. ¶ 2; Berry Decl., Ex. 1. The Story reported that Figure's effort to securitize its HELOCs was delayed last summer as "conflicting accounts arose about whether Figure was up front" about the presence of third liens in its asset pool "or if it left industry participants to learn about them on their own." *Id.* at 1. The Story reported that concerns were raised by the ratings agency Morningstar (and echoed by a fund operator) that Figure's asset pool – which it described as containing "junior liens" – contained "third lien loans," and that those loans created greater risk for the asset pool. *Id.* at 1-2. As the Story noted, a source explained that the term "junior lien . . . is typically understood to refer only to second-lien loans and not third-lien receivables," which "are like an unsecured consumer loan . . . [and thus] much riskier" than second liens. *Id.* at 2.

4

In response to these claims, the Story quoted Peter Silberstein, the head of Figure's capital-markets department, who insisted "the company never tried to conceal the presence of third-lien receivables in its asset pool." *Id.* Silberstein acknowledged that Figure "'originate[s] junior lien (including third lien) HELOCs,'" and stressed that Figure is "very transparent about this fact with all prospective and current investors. Anything you may have heard otherwise is false.'" *Id.* ABA further reported that "Silberstein noted that the issue [with the delay in a securities deal] is 'the first securitization entirely on blockchain – a new territory for the ABS [asset-backed securities] market'" and that "Figure is 'diligently working through the process, together with interested third-parties, and feel good about our progress.'" *Id.*

Three days after the Story was published, Figure filed this lawsuit against HSP and Birkbeck. In the lawsuit, Figure asserts a claim for defamation and purports to take issue with a variety of the Story's statements. Compl ¶¶ 11-19. But, as explained in more detail in the accompanying motion to dismiss, it does not actually contest the truth of any fact *ABA* reported and does not allege a plausible claim that HSP or Birkbeck made the statements at issue with knowledge that they were false or with serious doubts about their truth.

## ARGUMENT

HSP and Birkbeck are protected from Figure's lawsuit under California's anti-SLAPP law and seek the recourse provided by that statute for being compelled to defend themselves against its baseless claim.  Under New Jersey's choice-of-law-rules, California is the state with the most significant relationship to this action, and therefore its anti-SLAPP statute, including the immunity it provides and the attorney's fees it awards, is applicable here.  Because this lawsuit arises out of speech on a matter of public interest and Figure's claim fails as a matter of law, HSP and Birkbeck are immune from suit and entitled to their fees.

## I.    THE PROTECTIONS OF CALIFORNIA'S ANTI-SLAPP LAW APPLY IN THIS CASE.

### A.    California's Anti-SLAPP Law

California's anti-SLAPP law reflects that state's strong policy of protecting speech on matters of public interest and deterring people from bringing meritless lawsuits that target such speech.  The law provides that a defendant subject to a "cause of action . . . arising from any act of that person in furtherance of the person's right of . . . free speech under the United States Constitution or the California Constitution in connection with a public issue" may file "a special motion to strike."  Cal. Civ. Proc. Code § 425.16(b)(1).  Once the moving defendant has demonstrated that the claims at issue arise out of speech on a matter of public interest, the burden shifts to the plaintiff to "establish[] that there is a

6

probability that the plaintiff will prevail on the claim[s]." *Id.* If the plaintiff cannot make that showing, then the special motion to strike must be granted, and – subject to exceptions not applicable here – the moving defendant shall be awarded "his or her attorney's fees and costs." *Id.* § 425.16(c)(1)-(2).

As the Ninth Circuit has explained, "[t]he anti-SLAPP statute was enacted to allow for early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Batzel*, 333 F.3d at 1024 (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001)). In other words, "[t]he point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights." *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 193 (2005) (citation omitted). Because the purpose of the law is to shield defendants from the burdens imposed by lawsuits that attack protected speech, the protections the law provides are "in the nature of an immunity from suit." *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 (9th Cir. 2013); *see also Batzel*, 333 F.3d at 1025 ("a defendant's rights under the anti-SLAPP statute are in the nature of immunity: They protect the defendant from the burdens of trial, not merely from ultimate judgments of liability"). This protection is bolstered by a statutory requirement awarding attorney's fees to prevailing writers and speakers subjected to the burden of

7

defending against meritless claims.  *See, e.g.*, *Equilon Enters., LLC v. Consumer Cause, Inc.*, 52 P.3d 685, 691-92 (Cal. 2002).

### B.   New Jersey's Choice-of-Law Rules

In determining whether to apply California's anti-SLAPP law in this case, this Court applies the choice-of-law rules of the state in which it sits, New Jersey. *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007).  New Jersey has adopted the "most significant relationship test" of the Restatement (Second) of Conflict of Laws (the "Restatement") in tort cases like this one.  *See P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (2008); *James v. Glob. Tel*Link Corp.*, No. 13-4989 (WJM), 2018 U.S. Dist. LEXIS 131892, at *17-18 (D.N.J. Aug. 6, 2018).

In conducting the choice of law analysis, "the first step is to determine whether an actual conflict exists.  That is done by examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them."  *Camp Jaycee*, 197 N.J. at 143 (citations omitted); *see Kaplan v. GreenPoint Glob.*, No. 2:11-cv-04854 (WJM), 2012 U.S. Dist. LEXIS 100911, at *6 (D.N.J. July 20, 2012).  Here, there is an actual conflict between California law and New Jersey law with respect to this motion.[3]  Specifically, California has an anti-SLAPP statute that provides immunity against claims arising from protected

---

[3] There is no conflict in the law with respect to the substantive issues raised by the motion to dismiss.  *See* MTD Br. at 12 n.7.

speech on matters of public interest and awards attorney's fees to defendants

subjected to meritless defamation claims, while New Jersey law does not have a

similar statute.

When a conflict like this one arises, "the Court must determine which state

has the 'most significant relationship' to the claim, by 'weigh[ing] the factors set

forth in the Restatement section corresponding to the plaintiff's cause of action.'"

*Weske v. Samsung Elecs. Am., Inc.*, No. 2:10-cv-4811 (WJM), 2012 U.S. Dist.

LEXIS 32289, at *6 (D.N.J. Mar. 12, 2012) (quoting *Nikolin v. Samsung Elecs.*

*Am., Inc.*, 2010 U.S. Dist. LEXIS 110942, at *3 (D.N.J. Oct. 18, 2010)).

The directly applicable portion of the Restatement here is Section 150,

which "applies in situations" like this one, "where a defamatory statement in an

aggregate communication is published to persons other than the person defamed in

two or more states."  Restatement § 150 cmt. a.  Under Section 150,

> [t]he rights and liabilities that arise from defamatory
> matter in any one edition of a book or newspaper . . .  or
> similar aggregate communication are determined by the
> local law of the state which, with respect to the
> particular issue, has the most significant relationship to
> the occurrence and the parties under the principles
> stated in § 6.

Restatement  § 150(1); *see Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt.,*

*L.L.C.*, 450 N.J. Super. 1, 54 (Super. Ct. App. Div. 2017) (applying Section 150(a)

to "aggregate communications published in a manner intended to influence all

persons and entities who follow or participate in the financial marketplace and financial news media").

When a corporation, like Figure, "claims that it has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the corporation . . . had its principal place of business at the time, if the matter complained of was published in that state." Restatement § 150(3); *see Sys. Operations, Inc. v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1138 (3d Cir. 1977). As the comments to the Restatement explain, a corporation's "principal place of business is the place where its reputation will usually be most grievously affected." Restatement § 150 cmt. f.

Figure's principal place of business is California. *See* Compl. ¶ 5. Thus, under Restatement § 150, the state with the most significant interest presumptively is California.

Section 6, containing general principles applicable to all claims, serves only to reinforce the conclusion that the law of California governs. That section considers: (1) interstate comity; (2) the interests of the parties; (3) the underlying field of law; (4) the interests of judicial administration; and (5) the interests of the states. *Camp Jaycee*, 962 A.2d at 463.

These factors were evaluated by the Ninth Circuit in *Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016), which considered the application of the California anti-

SLAPP statute under New Jersey choice-of-law principles after the case was transferred to California from this District.  Although that case addressed a lawsuit brought by a plaintiff who claimed New Jersey residence against defendants from California and other states, the Ninth Circuit's analysis of these principles applies with equal force here.  Focusing on the first and fifth factors – interstate comity and the competing interests of the states – the Court of Appeals noted that "California has expressed a strong interest in enforcing its anti-SLAPP law to 'encourage continued participation in matters of public significance' and to protect against 'a disturbing increase in lawsuits brought primarily to chill the valid exercise' of constitutionally protected speech."  *Id.* at 899 (citation omitted).  The court continued by explaining that "[a]lthough New Jersey has declined to establish a similar law, its courts have allowed defendants to bring a claim for malicious use of process to protect against suspected SLAPP actions.  In this regard, New Jersey seems to have staked something of a middle ground to guard against SLAPP lawsuits."  *Id.* (citing *LoBiondo v. Schwartz*, 199 N.J. 62, 88-89 (2009)).  The Ninth Circuit concluded that "[w]hereas California would appear to object strongly to the absence of a robust anti-SLAPP regime, New Jersey's interests would be less harmed by the use of California law" and therefore the "interests of interstate comity and the competing interests of the states tilt in favor of applying California law."  *Id.* at 899-900.

Here, New Jersey's interest in protecting its residents from baseless defamation claims is consistent with, and complemented by, California's strong statute seeking to deter such claims – particularly, because California law compensates defendants who are forced to defend against SLAPP suits. California's anti-SLAPP law provides for an award of attorney's fees to the prevailing party to "discourag[e], insofar as fees may be shifted, a plaintiff's meritless claims." *Equilon Enters.*, 52 P.3d at 691 (internal marks and citation omitted). In fact, it has long been recognized that the "allowance of mandatory attorney fees to the prevailing defendant reflect[s] the statutory purpose to prevent and deter SLAPP suits by ending them early and without great cost to the SLAPP target." *Britts v. Superior Court*, 52 Cal. Rptr. 3d 185, 192 (Ct. App. 2006) (citation omitted). As one federal court has observed, "California's anti-SLAPP statute provides a mechanism for a defendant to strike civil actions or claims brought primarily to chill the exercise of free speech," and the legislation provides for a fee award "[i]n order to deter such chilling." *Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1181 (S.D. Cal. 2008).

California's interest in deterring its residents from bringing baseless defamation claims would be defeated if they could simply file suit in another jurisdiction. Likewise, New Jersey has no interest in protecting an out-of-state plaintiff bringing a meritless defamation claim at the expense of its own citizens.

And, New Jersey also has no interest in depriving its residents of the possibility of recovering for an injury caused by a foreign state's resident (here, the filing of a meritless defamation lawsuit that is compensable under California law through an award of attorney's fees).

New Jersey courts have rejected similar possibilities in the past, applying other states' laws to ensure its residents have an opportunity to be compensated for harm they incur. For example, in *Haggerty v. Cedeno*, 279 N.J. Super. 607 (Super. Ct. App. Div. 1995), the court ruled that New York law should apply to a claim brought by a New Jersey resident injured in a car crash, reasoning that

> New Jersey's interest in adhering to fault-based owner's liability is substantially diluted where, as in the present case, the owner is not a New Jersey resident, has its principal place of business in New York, the vehicle is registered in New York, and New York has determined that its vehicle owners shall be liable for the negligence of persons operating their automobiles.

*Id.* at 612; *see also, e.g.*, *Greenfeder v. Jarvis*, 302 N.J. Super. 153, 161 (Super. Ct. App. Div. 1997) ("[c]learly, New Jersey has no interest in shielding an out-of-state owner or lessor from liability").

Here, Figure chose to make California its home, fully aware that would mean that state's statutes, including the anti-SLAPP law, would apply. It should not be permitted to bring suit in New Jersey to escape the immunity provided for, and liability imposed by, its home state, which seeks to deter its residents from

13

filing meritless libel claims and would require the payment of attorney's fees for the filing of such a claim.  *See, e.g.*, *Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 2d 875 (D.N.J. 2010) (applying Texas statutory defense to claim brought by Texas plaintiff against New Jersey defendant); *cf. Veazey v. Doremus*, 103 N.J. 244 (1986) (applying Florida's spousal immunity statute to prevent one spouse from suing another spouse in New Jersey, when both spouses were domiciled in Florida but injury occurred in New Jersey).

Consideration of the remaining factors does not change this analysis.  The second factor – the interests of the parties – "ordinarily plays little or no part in a choice-of-law question in the field of torts." *Fu v. Fu*, 160 N.J. 108, 123 (1999). The third factor – the underlying field of law – also supports the application of the anti-SLAPP statute here.  As discussed above, both California and New Jersey law favor the deterrence of frivolous defamation lawsuits.  Because the California anti-SLAPP statute "serves to deter and prevent the prototypical SLAPP suit, in which the plaintiff does not hope to win the lawsuit and instead 'tries to wear down the other side by forcing it to spend time, money, and resources battling the SLAPP instead of the protected activity,'" the factor "tips toward applying the more efficient anti-SLAPP statute's procedure to this action." *Schering Corp. v. First DataBank, Inc.*, 2007 U.S. Dist. LEXIS 50164, at *18-19 (N.D. Cal. Apr. 20,

2007) (citation omitted).[4]  The fourth factor—judicial administration—might favor New Jersey slightly, "as this court sits in New Jersey and is accustomed to applying the State's law, but this factor is not significant enough to outweigh the strong interest[]" that California has in this matter.  *E.g.*, *Clark v. Prudential Ins. Co. of Am.*, 2009 U.S. Dist. LEXIS 84093, at \*47 (D.N.J. Sept. 15, 2009).

Courts have applied the anti-SLAPP laws of California and other states in similar factual circumstances to those at bar.  For example, in *Tobinick v. Novella*, 108 F. Supp. 3d 1299 (S.D. Fla. 2015), the court applied Florida's "significant relationship" test and determined that the California anti-SLAPP law should apply to defamation claims brought by a California corporation against a resident of Connecticut.  Specifically, the court noted that the plaintiff "is a California corporation with its principal place of business in California" and to the extent it was injured "most – if not all – of its injury undoubtedly occurred in California, given that the corporation is based in that state."  *Id.* at 1304.  Moreover, it found that "California's interest in limiting frivolous litigation filed by its residents outweighs any interest Florida has in the dispute, where that dispute is between a California corporation and a Connecticut resident."  *Id.*

---

[4] Although the district court declined to apply the anti-SLAPP law in *Schering Corp.*, the plaintiff in that case was headquartered in New Jersey, not California, so the opposite presumption applied.

Plaintiff's own counsel successfully argued for the application of the Texas anti-SLAPP law to an action brought by a Texas plaintiff against President Trump in California. *See Clifford v. Trump*, 339 F. Supp. 3d 915, 921 (C.D. Cal. 2018). In that case, the court applied New York's choice-of-law rules, which like New Jersey, applies the most significant interest test. *See id.* The *Clifford* court looked to the state of plaintiff's domicile (Texas) and Restatement § 150 in reaching its conclusion that the Texas anti-SLAPP law applied and entitled President Trump to his attorney's fees. *Clifford*, 339 F. Supp. 3d at 921-22, 929.

Similarly, in *Adelson v. Harris*, 973 F. Supp. 2d 467, 475-81 (S.D.N.Y. 2013), the court conducted a New York choice-of-law analysis and determined that Nevada law, including its anti-SLAPP statute, applied to a defamation claim brought by a Nevada resident.

The bottom line is that the law of Figure's home state has the most significant interest, and its law, including its anti-SLAPP law, should be applied to Figure's claim.[5]

---

[5] The substantive immunity and remedy provided by California's anti-SLAPP law apply with equal force in federal court under the *Erie* doctrine. *See, e.g.*, *Price v. Stossel*, 620 F.3d 992, 999 (9th Cir. 2010) (noting that Courts "have repeatedly held that California's anti-SLAPP statute can be invoked by defendants who are in federal court on the basis of diversity jurisdiction"); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 263-64 (9th Cir. 2013) (applying California's anti-SLAPP law in federal court); *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005) (same); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (same); *Diamond Ranch Academy, Inc. v. Filer*, 117 F. Supp. 3d 1313, 1317-19 (D.

## II.     DEFENDANTS ARE ENTITLED TO RELIEF
UNDER CALIFORNIA'S ANTI-SLAPP LAW.

In applying California's anti-SLAPP law, courts "'engage in a two-part inquiry.'" *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (quoting *Vess*, 317 F.3d at 1110). "First, the defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Id.* (internal marks and citation omitted). "[O]nce the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id.* (citation omitted).

### A.     Figure's Claim Arises From Speech
On A Matter Of Public Interest.

This lawsuit plainly arises out of activity within the purview of California's anti-SLAPP law. The statute defines "act[s] in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" to include "speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e). Figure's claim arises out of the Story, which indisputably addresses a matter of intense public interest: the efforts of one of the country's largest originators of home equity loans to complete the very first securitization on blockchain. Indeed,

---

Utah 2015) (same); *Gilead Scis., Inc. v. Abbott Labs., Inc.*, 2015 U.S. Dist. LEXIS 31006, at *8-12 (D. Del. Mar. 13, 2015) (same).

Figure's astronomic growth in the HELOC market and its work to securitize its HELOCs on blockchain have generated widespread media coverage, by both the mainstream and specialty press. *See* MTD Br. at 4-8, 29-32 (detailing extensive press coverage of Figure and its efforts to sell bonds secured by the HELOCs it originates). This coverage reflects the intense public interest in the quality of asset-backed securities. *See, e.g.*, *Pub. Emps.' Ret. Sys. v. Moody's Inv'rs Serv., Inc.*, 172 Cal. Rptr. 3d 238, 251 (Ct. App. 2014) (ruling that the "financial well-being of a significant investment opportunity that was of interest to a definable portion of the public" was a matter of public interest); *GetFugu, Inc. v. Patton Boggs LLP*, 162 Cal. Rptr. 3d 831, 838 (Ct. App. 2013) ("[T]he common interest of all Americans in a growing economy that produces jobs, improves our standard of living, and protects the value of our savings means there is a public interest in protecting investors so as to promote the capital formation that is necessary to sustain economic growth." (internal marks and citation omitted)); *Wilbanks v. Wolk*, 17 Cal. Rptr. 3d 497, 507-08 (Ct. App. 2004) ("consumer protection information" was a matter of public interest); *see also, e.g.*, *Chau v. Lewis*, 935 F. Supp. 2d 644, 666 (S.D.N.Y. 2013) ("Many now view investments in subprime mortgage bonds, and their subsequent disastrous default, as significantly responsible for the greatest economic crisis since the Great Depression."), *aff'd on other grounds*, 771 F.3d 118 (2d Cir. 2014).

18

Because Defendants have made their prima facie showing under the first step in the anti-SLAPP analysis, the law requires Figure to demonstrate a "probability" of prevailing on its claims.  It cannot meet that burden.

### B.    Figure Cannot Meet Its Burden Of Showing A Probability Of Prevailing On Its Claims.

Where, as here, "a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies." *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) (quoting *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 983 (C.D. Cal. 1999)).  Thus, "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id.*

In this case, as set out in greater detail in Defendants' contemporaneously filed motion to dismiss pursuant to Rule 12(b)(6), which is incorporated here in its entirety, Figure's defamation claim fails as a matter of law.  In particular, Figure cannot demonstrate that anything in the Story was materially false or that it was published with actual malice.  *See* MTD Br. at 13-39.  Accordingly, Figure cannot carry its burden of demonstrating that it has a probability of prevailing on its defamation claim.  Defendants therefore are immune from suit and "shall be

entitled to recover [their] attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1)-(2).

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that their motion to pursuant to California's anti-SLAPP law be granted and that they be awarded their attorney's fees and costs in defending against this meritless lawsuit.[6]

Dated:  April 10, 2020                       Respectfully submitted,

                                             BALLARD SPAHR LLP

                                             By  *s/ Michael Berry*
                                                 Michael Berry

                                             1735 Market Street, 51st Floor
                                             Philadelphia, PA 19103
                                             Phone: (215) 665-8500
                                             Fax: (215) 865-8999
                                             berrym@ballardspahr.com

                                             Thomas B. Sullivan
                                             1675 Broadway, 19th Floor
                                             New York, NY 10019
                                             Phone: (212) 850-6139
                                             Fax: (212) 223-1942
                                             sullivant@ballardspahr.com

                                             *Counsel for Defendants*

---

[6] Defendants will submit a fee petition should the Court grant the instant Motion.